2012 COA 111

### The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

### Alexander KOVACS, Defendant–Appellee.

### No. 11CA0950.

Colorado Court of Appeals, Div. III.

July 5, 2012.

Kenneth R. Buck, District Attorney, Christian J. Schulte, Chief Deputy District Attorney, Greeley, Colorado, for Plaintiff–Appellant.

Newell & Decker, Steven R. Newell, Denver, Colorado; Reilly Pozner LLP, Michael T. Kotlarczyk, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge GABRIEL.

¶ 1 The People appeal the district court's order dismissing for lack of probable cause their indictment of defendant, Alexander Kovacs, for forgery. A person commits forgery if, with intent to defraud, he or she, among other things, "falsely . . . completes . . . a written instrument which is or purports to be, or which is calculated to become or to represent if completed . . . [a] commercial instrument . . . or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." § 18–5–102(1)(c), C.R.S.2011. The sole issue before us concerns the meaning of "falsely completes," which is defined in section 18–5–101(3), C.R.S.2011, for purposes of the forgery statute.

¶ 2 We conclude that a person falsely completes an instrument for purposes of section 18–5–101(3)(b), C.R.S.2011, when he or she (1) adds or inserts materially false information or a materially false statement (2) to any instrument, genuine or non-genuine, (3) thereby purporting to complete the instrument so as to render it legally operative. Accordingly, we hold that the district court erred in finding that the crime of forgery requires a non-genuine instrument. We thus reverse the order and remand this case with instructions that the district court reconsider Kovacs' motion to review probable cause and to quash the indictment in accordance with the statutory construction set forth in this opinion.

## I. Background

¶ 3 In 2010, a grand jury indicted Kovacs on five counts of forgery of a written instrument that evidenced or otherwise affected a legal right, interest, obligation, or status, in violation of section 18–5–102(1)(c). The indictment alleged that (1) Kovacs provided to various parties appraisals containing material misrepresentations or omissions; (2) he falsely certified those appraisals as true and accurate, and as having been completed in compliance with the applicable professional guidelines; (3) the misrepresentations, omissions, and false certifications could have affected the stated values of the properties at issue and changed the risks to banks that were relying on the appraisals to make loans; and (4) various lenders would not have funded those loans had they known the true facts. The People further contend that Kovacs transformed the incomplete appraisals into completed ones by adding to each a "Certification of Appraisal" affirming that the appraisal was (1) based on true and correct information, (2) created without bias or predetermined results, and (3) completed according to specific professional, regulatory, and statutory guidelines.

¶ 4 Kovacs filed a motion to review probable cause and to quash the indictment, arguing that no probable cause existed and that the indictment was substantively defective because an appraisal is not a "commercial instrument" within the meaning of section

18-5-102(1)(c). The district court denied this motion but, on its own motion, raised the question of whether the record supported a finding of probable cause to believe that the appraisals were "forged instruments," as that term is defined in section 18-5-101(5), C.R.S. 2011. Specifically, the court questioned (1) how Kovacs' alleged material omissions satisfied the statutory requirement that he add or insert a materially false statement, and (2) whether Kovacs could properly be charged with completing an incomplete written instrument that he solely authored. The court thus ordered the parties to address these issues.

¶ 5 After considering the parties' respective positions, the court dismissed the indictment. In reaching this decision, the court noted that the sole basis for the indictment was the claim that the appraisals contained false information on which Kovacs intended third parties to rely. The court concluded, however, that adding false information to a document does not meet the definition of forgery if the added information does not transform the document into a completed or altered instrument.

¶ 6 In addition, relying on *De Rose v. People*, 64 Colo. 332, 334, 171 P. 359, 360 (1918), the court opined that a false statement of fact in an instrument that is genuine is not a forgery. The court then noted that the People had failed to present any evidence that the appraisals at issue purported to be anything other than appraisals prepared by Kovacs. The court further observed that the People did not present evidence that any material portions of the appraisals were fictitious, or that Kovacs lacked the authority to produce the appraisals. Accordingly, the court held that the case involved allegedly false statements of fact in genuine instruments, which the court concluded could not support forgery charges.

¶ 7 The People now appeal.

## II. Rules of Statutory Construction

¶ 8 This case requires us to construe section 18-5-101(3)(b) and its associated definitional provisions.

¶ 9 Statutory interpretation is a question of law that we review de novo. *People v. Daniels*, 240 P.3d 409, 411 (Colo.App.2009). Our primary purpose in statutory interpretation is to ascertain and give effect to the intent of the General Assembly. *Id.* We first look to the language of the statute, giving words and phrases their plain and ordinary meaning. *Id.* We read words and phrases in context, and construe them according to their common usage. *Id.* When a statute does not define its terms but the words used are terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meanings of those words. *Id.*

¶ 10 In addition, we must interpret a statute in a way that best effectuates the purpose of the legislative scheme. *Id.* When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Id.* In doing so, a court should not interpret the statute so as to render any part of it either meaningless or absurd. *Id.*

[2]  ¶ 11 If the statute is unambiguous, we look no further. *Id.* If a statute is ambiguous, however, then we may consider prior law, legislative history, the consequences of a given construction, and the underlying purpose or policy of the statute. *Id.*

## III. Section 18-5-101(3)

¶ 12 Prior to 1994, the predecessor statute to section 18-5-101(3) consisted only of text that is virtually identical to what is now section 18-5-101(3)(a), C.R.S.2011. Ch. 121, sec. 1, § 40-5-101(5), 1971 Colo. Sess. Laws 434. This text provided:

> To "falsely complete" a written instrument means to transform an incomplete written instrument into a complete one by adding, inserting, or changing matter without the authority of anyone entitled to grant such authority, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker.

*Id.*

¶ 13 The predecessor to section 18-5-101(7), C.R.S.2011, in turn, defined (and sec-

tion 18–5–101(7) still defines) "incomplete written instrument" as "one which contains some matter by way of content or authentication but which requires additional matter in order to render it a complete written instrument." Ch. 121, sec. 1, § 40–5–101(3), 1971 Colo. Sess. Laws 433; § 18–5–101(7). A complete written instrument was (and remains) "one which purports to be a genuine written instrument fully drawn with respect to every essential feature thereof." Ch. 121, sec. 1, § 40–5–101(2), 1971 Colo. Sess. Laws 433; § 18–5–101(1), C.R.S.2011.

¶ 14 Our supreme court consistently construed this pre–1994 version of the forgery statute (as well as its predecessor statutes) to mean that a false statement of fact in a genuine instrument is not forgery. *See De Rose*, 64 Colo. at 334, 171 P. at 360; *cf. People v. Brown*, 193 Colo. 120, 122, 562 P.2d 754, 755–56 (1977) (holding, consistent with *De Rose*, that a defendant committed forgery by inserting a fictitious name in the "For" blanks of various stolen gift certificates, because "without the fictitious name inserted, the store would not have accepted the certificates").

¶ 15 In 1994, the General Assembly enacted H.B. 94–1126, which, as pertinent here, amended section 18–5–101(3) to add what is now section 18–5–101(3)(b). Ch. 287, sec. 12, § 18–5–101(3)(b), 1994 Colo. Sess. Laws 1719. Section 18–5–101(3)(b) provides that, in addition to the definition in section 18–5–101(3)(a), to "falsely complete" a written instrument means:

> To transform an incomplete written instrument into a complete one by adding or inserting materially false information or adding or inserting a materially false statement. A materially false statement is a false assertion that affects the action, conduct, or decision of the person who receives or is intended to receive the asserted information in a manner that directly or indirectly benefits the person making the assertion.

¶ 16 This added definition of "falsely complete" reflects an unambiguous legislative determination to expand that phrase beyond the limitations set forth in *De Rose* and its progeny, and although, in these circum-

stances, we need not resort to legislative history, we believe that it is useful to note that the legislative history of section 18–5–101(3)(b) strongly confirms our interpretation. Specifically, the legislative history reveals that section 18–5–101(3)(b) was adopted at the urging of the Attorney General's office, in response to perceived shortcomings in the then-existing law. Hearings on H.B. 1126 before the H. Judiciary Comm., 59th Gen. Assemb., 2d Sess. (Jan. 27, 1994) (House Hearings); Hearings on H.B. 1126 before the S. Judiciary Comm., 59th Gen. Assemb., 2d Sess. (Apr. 27, 1994) (Senate Hearings). The Attorney General was aware of situations in which individuals had defrauded the government by completing government forms such as building permits and workers' compensation insurance applications by inserting false information on which the government then relied (e.g., in setting permit fees or premium rates). House Hearings; Senate Hearings. The Attorney General believed that this conduct was criminal in nature, but the conduct did not clearly fall within any particular criminal statute. House Hearings; Senate Hearings. Specifically, although the Attorney General believed that the conduct was in the nature of forgery, the supreme court's decision in *De Rose* precluded prosecution for forgery in these circumstances, because the forms themselves were genuine. House Hearings; Senate Hearings. The Attorney General thus asked the General Assembly to amend the forgery statute so that it would cover materially false statements in "correctly appearing" or "legal" (i.e., genuine) documents. House Hearings; Senate Hearings.

¶ 17 In response to this request, the General Assembly adopted the language that is now contained in section 18–5–101(3)(b). In doing so, the legislation's senate sponsor noted the goal of extending the forgery statute to cases in which a person submits a form containing false information. Senate 2d Reading of H.B. 1126, 59th Gen. Assemb., 2d Sess. (May. 9, 1994) (statement of Sen. Wham). Thus, in adding subsection (3)(b), the General Assembly intended to expand the *De Rose* definition of forgery to situations involving the false completion of genu-

ine instruments containing materially false information or statements, where, among other things, the instrument was calculated to affect a legal right, interest, obligation, or status.

¶ 18 In light of the foregoing, we conclude that the district court erred in dismissing the indictment based on its view that the forgery statute required the completion of a non-genuine instrument. Accordingly, we reverse the order and remand this case for further proceedings.

¶ 19 The question remains, however, as to the proper construction of section 18–5–101(3)(b) to be applied on remand. For the reasons set forth above, we conclude that a person falsely completes a written instrument under section 18–5–101(3)(b) when he or she adds or inserts materially false information or a materially false statement to any instrument, genuine or non-genuine, thereby purporting to complete the instrument so as to render it legally operative. *Cf. Brown*, 193 Colo. at 122, 562 P.2d at 755–56 (noting that the entry of a name in the "For" line of certain gift certificates was required before a store would accept them).

■ ¶ 20 In reversing the order and adopting the foregoing statutory construction, we do not address the question of whether the documents at issue here were "commercial instruments" within the meaning of section 18–5–102(1)(c). As noted above, Kovacs contended in the district court that they were not, but the court rejected that argument. Kovacs has not renewed this argument before us, either by way of a conditional cross-appeal or by way of an alternative argument for affirmance. Accordingly, that issue is not before us.

¶ 21 In addition, we reject, in turn, Kovacs' contentions that expanding the forgery statute to genuine documents completed with materially false information or statements would (1) place too much emphasis on *when* inaccurate information is put into a document, (2) create an overly broad rule that will chill commercial conduct, and (3) unduly expand the criminal law into the realm of the civil law.

¶ 22 First, under our construction of section 18–5–101(3)(b), a defendant falsely completes a genuine instrument only when he or she adds or inserts materially false information or a materially false statement that purports to complete the instrument so as to render it legally operative (here, by adding the certification and signature). In this way, the provision focuses not on when a defendant inserted or added the information or statement, but rather on whether the added information or statement was necessary to render the instrument legally operative, an interpretation that is fully consistent with the plain language of the forgery statute.

¶ 23 Second, our construction of section 18–5–101(3)(b) criminalizes only a narrow type of factual misstatement and requires a defendant to insert or add the requisite false information or statement with the intent to defraud. *See* § 18–5–102(1), C.R.S.2011. In this regard, our construction is consistent with other criminal statutes concerning false statements and requiring scienter. *See, e.g.,* § 18–5–114(1), C.R.S.2011 (offering a false instrument for recording); § 18–8–503(1), C.R.S.2011 (perjury); *see also* §§ 6–1–114, 6–1–717, C.R.S.2011 (establishing criminal penalties for knowingly submitting, in the course of one's business, vocation, or occupation, a false or misleading appraisal in connection with a dwelling offered as security for repayment of a mortgage loan). Accordingly, we do not agree that our construction, which is consistent with the plain language of the statute, will chill normal, lawful business activity.

¶ 24 Finally, our construction does not unduly expand the criminal law into the realm of civil law. In limited cases, the General Assembly has chosen to create laws that subject the same conduct to both criminal penalties and private civil liability. *See, e.g.,* §§ 11–51–301, 11–51–501, 11–51–603, 11–51–604, C.R.S.2011 (securities fraud); §§ 18–17–101 to–109, C.R.S.2011 (Colorado Organized Crime Control Act); *see also Razi v. Schmitt*, 36 P.3d 102, 105–06 (Colo.App.2001) (holding that a person who intentionally sets fire to another person's property may be criminally and civilly liable). For the reasons set forth above, the General Assembly

has created such a dual criminal and civil liability scheme here, and any concerns that Kovacs may have regarding the wisdom of such a decision must be directed to that body, not this court.

IV.  Conclusion and Remand Order

¶ 25 For these reasons, the order is reversed, and the case is remanded to the district court with instructions that the court reconsider Kovacs' motion to review probable cause and to quash the indictment in accordance with the statutory construction of section 18–5–101(3)(b) set forth in this opinion.

Judge ROY and Judge TERRY concur.